Wm. Keith Dozier, OSB 012478
keith@wkd-law.com
Wm. Keith Dozier, LLC
385 First St., Ste. 215
Lake Oswego, OR 97034
Telephone: 503-594-0333
Fax: 503-697-0841

Of Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| JOHN BRANCH and REA BRANCH,<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA<br>DEPARTMENT OF VETERANS AFFAIRS,<br><br>Defendant | ) Case No.: 3:17-cv-00202<br>)<br>)<br>) **COMPLAINT**<br>)<br>) **Federal Tort Claim (28 U.S. Code §**<br>) **1346(b)(1))**<br>)<br>)<br>)<br>)<br>) |

Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.

This Court has jurisdiction pursuant to 28 U.SC. § 1346(b)(1). Tort Claim Notice has

been served on defendant.

/ / /

PAGE 1 –COMPLAINT

2.

All of the relevant acts and omissions of defendant alleged herein were committed in the State of Oregon.

**PARTIES**

3.

Plaintiff Rea Branch is a resident of the State of Oregon. Plaintiff John Branch is a resident of the State of Washington.

4.

Defendant is a federal governmental agency.

5.

Plaintiffs served defendant with a Tort Claim Notice on June 7, 2013. Defendant formally denied the claims on November 26, 2013. Plaintiffs served the VA with a Request for Reconsideration on May 21, 2014. The VA's Office of General Counsel has yet to make a final determination regarding to plaintiffs' tort claims.

**COMMON ALLEGATIONS**

6.

Mr. Branch volunteered for the U.S. Navy during the Vietnam Conflict, eventually earning the rank of Third Class Petty Officer.  He experienced combat while serving aboard the cruiser U.S.S. Providence and the destroyer U.S.S. Rowan during operations off the coast of North and South Vietnam firing deck guns and missiles at enemy vessels and shore-based installations. Mr. Branch participated in Operation Lion's Den, the Battle of Haiphong Harbor.

7.

After being honorably discharged from the U.S. Navy in 1974. Mr. Branch returned to private life. He raised a family and ran his own business.

PAGE 2 –COMPLAINT

8.

By 2001 Mr. Branch was suffering from recurring violent nightmares, insomnia, anxiety, depression, and isolation. Mr. Branch sought treatment and was diagnosed with severe Post Traumatic Stress Disorder ("PTSD") related to his combat military experience by the U.S. Veterans Administration (the "VA").

9.

His VA caregivers were aware that Mr. Branch had abused alcohol in the past and that he was struggling with tobacco dependency.

10.

To treat his PTSD and related symptoms Mr. Branch was prescribed a class of drugs known as benzodiazepines. These included the drugs Alprazolam and Clonazepam.

11.

Benzodiazepines were originally developed for and used as anti-seizure medications. The Federal Drug Administration has never approved Clonazepam for the treatment of PTSD.

12.

Benzodiazepines have a propensity to potentiate the effects of other drugs, interfere with memory, frustrate potential benefits of counseling, are highly addictive and can result in severe side effects from withdrawal if their use is suddenly decreased or stopped.

13.

The VA and the U.S. Department of Defense ("DoD") jointly issued a formal Clinical Practice Guideline For Management of Post-Traumatic Stress in 2004 ("Version 1.0 – 2004"). It stated that benzodiazepines were determined to be of no benefit and were harmful in the treatment veterans suffering from PTSD.

14.

The VA/DoD policy issued in 2004 recommended against the use of benzodiazepines because of the risk of abuse in patients with a history of substance abuse, their addictive properties, the potential need for medical detoxification if its use was stopped, memory impairment that interferes with psychotherapy, and the fact that there is no evidence that benzodiazepines are useful in treating the core symptoms of PTSD.

PAGE 3 –COMPLAINT

15.

The VA policy issued in 2004 recommended that if doses of Clonazepam were sustained for more than two months, the drug's use should be carefully reduced in dosage over time, its use gradually tapered.

16.

The VA/DoD policy regarding the treatment of veterans suffering from PTSD was revised in 2010 ("Version 2.0 - 2010"). It made the same recommendations regarding benzodiazepines. It stated that withdraw symptoms related to benzodiazepines are compounded by the underlying PTSD symptoms and that their use is contraindicated in subjects with alcohol abuse or substance abuse disorders. These guidelines have remained in place through today.

17.

The VA and DoD also issued formal guidelines regarding how to implement the 2010 VA/DoD Clinical Practice Guideline For Management of Post-Traumatic Stress. It explained how the VA/DoD policy was to not prescribe benzodiazepines to veterans suffering from PTSD.

18.

Withdrawal symptoms for benzodiazepines documented in medical literature include physical aggressiveness, depression, hallucinations, psychosis, and anxiety.

19.

Through 2009 and 2010 Mr. Branch developed severe back pain and referral pain and weakness into his left leg due to a back injury.  He was prescribed increasing doses of opiate medication to manage his pain. At that time his Clonazepam prescription remained at its maximum dosage of six milligrams per day and he remained on Alprazolam.

20.

On December 4, 2010, Mr. Branch suffered an episode of severe cognitive disorientation and was admitted for psychiatric care. He became physically aggressive with hospital staff, though he had no memory of this. It was believed that this episode was due to adverse drug interactions involving benzodiazepines and his increased pain medications.

PAGE 4 –COMPLAINT

21.

On December 7, 2010, it was recommended to Mr. Branch by VA staff (via a telephone conversation with his wife) that he taper his benzodiazepine dosage.

22.

On December 21, 2010, Mr. Branch reported to VA staff a difficulty in trying to reduce the amount of benzodiazepine he was taking. However, he committed to try again.

23.

By January 3, 2011, Mr. Branch was suffered from increased anxiety and delirium while trying to taper his Clonazepam usage. He was suicidal and paranoid. Out of frustration he flushed his mediations down a toilet because he felt that he was being poisoned. Mr. Branch told caregivers that his mind was not working right and that he needed help. He was stabilized when caregivers restarted his usual medications, including the benzodiazepine.

24.

On February 8, 2011, Mr. Branch again told VA staff that he was unable to reduce his dosage of benzodiazepine. It was noted that he wanted to wait on trying to taper again until he had a consultation for possible back surgery.

25.

On April 4, 2011, VA staff noted that Mr. Branch had attempted to reduce his benzodiazepine dosage twice and that both times he ended up being hospitalized.

26.

On June 2, 2011, Mr. Branch was seen at the VA for a pre-operative visit for surgery on his lower back. His prescription for Clonazepam was noted in the medical chart that day. At that time his back pain was noted to be severe.

27.

Mr. Branch had back surgery at the Portland VA hospital on June 8, 2011.

28.

Mr. Branch was discharged after surgery on June 9, 2011. He was prescribed another drug to treat post-operative muscle tightness, Diazepam, and was told by his care provider not to take it at the same time as Clonazepam. Mr. Branch later received a pharmacy discharge

PAGE 5 –COMPLAINT

1  education consultation. The medical chart indicates that he was told not to take the Diazepam

2  with his Clonazepam unless absolutely necessary. It was noted that Mr. Branch verbalized an

3  understanding. However, the caregiver specifically noted that it was unclear how much of the

4  discharge education counseling Mr. Branch would remember because of his level of sedation.

29.

5

6  Mr. Branch was not warned about the potential issues related to withdrawal from the

clonazepam if he stopped its use because he was taking Diazepam.

7

30.

8  After discharge Mr. Branch discontinued his use of Clonazepam, believing that it had

9  been replaced by Diazepam. In the days leading up to June 21, 2011, he was suffering from

10  severe confusion, paranoia and anxiety. He attended a post-op appointment that morning with

11  back pain that continued to be severe. The nursing note in his chart indicates that he told VA

12  staff that he was unsure about how he was to take his medications. The same note indicated that

13  his Clonazepam had been discontinued. Mr. Branch left the VA frustrated, depressed and

confused. He disappeared.

14

31.

15

16  On June 24, 2011, Mr. Branch returned home and suffered a severe psychotic episode

wherein he became delusional and experienced hallucinations. Mr. Branch believed that he was

17  fighting Satan for his soul and exhibited aggressive behavior towards his wife of thirty-two

18  years. His wife called the police. When they arrived Mr. Branch, in his delusional state, failed to

19  heed the commands of a police officer and was shot.

20  32.

21  The police shot Mr. Branch in his abdomen causing injury to his internal organs. He

22  suffered physical pain as well as mental suffering and anguish as a result of his physical injury

all to his non-economic damages in an amount to be determined at trial.

23

33.

24

25  As a result of the events of June 24, 2011, Mr. Branch pleaded guilty but for reason of

insanity to felony criminal charges and was detained at the Oregon State Hospital for a term of

26  not more than ten years. He suffered mental anguish, isolation, loss of freedom and humiliation

PAGE 6 –COMPLAINT

Wm. Keith Dozier, LLC
385 First St., Ste. 215
Lake Oswego, OR  97034
P: (503) 594-0333 F: (503) 697-0841

for being interned at a mental facility due to defendant's conduct all to his non-economic damages in an amount to be determined at trial.

34.

Mr. Branch received appropriate treatment and therapy while at the Oregon State Hospital. He was tapered off of benzodiazepines completely. He has had no more psychotic episodes or delirium since being safely tapered off of benzodiazepines.

35.

Mr. Branch was discharged from the Oregon State Hospital in 2014. He has not suffered any episodes of delirium, confusion, aggression, or suicidal ideation since being tapered off of benzodiazepines and receiving appropriate therapy.

36.

As a result of these events Mr. and Mrs. Branch have now divorced. Their marriage of over thirty years could not be repaired.

37.

Mr. Branch required surgery and incurred $59,381.91 in medical bills after being shot.

38.

Mr. Branch has incurred charges of over $600,000.00 for this internment at the Oregon State Hospital. The exact amount of what Mr. Branch may owe to the State of Oregon is to be determined at trial.

39.

Mr. Branch lost his disability benefits as a result of his criminal conviction. The amount of loss is to be determined at the time of trial.

## FIRST CLAIM FOR RELIEF

### (Negligence)

40.

Defendant, through the acts and omissions of its agents, was negligent in one or more of the following ways that caused Mr. Branch's damages:

Wm. Keith Dozier, LLC
385 First St., Ste. 215
Lake Oswego, OR  97034
P: (503) 594-0333 F: (503) 697-0841

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

a.  In prescribing Mr. Branch benzodiazepine for the treatment of Posttraumatic Stress Syndrome;

b.  In failing to properly monitor Mr. Branch's mental condition prior to his back surgery in 2011;

c.  In failing to taper Mr. Branch off of the use of benzodiazepine prior to his back surgery in 2011;

d.  In failing to warn Mr. Branch that if he underwent the back surgery of 2011 he would have to discontinue the use of benzodiazepine to take other drugs prescribed for recovery from surgery;

e.  In failing to provide Mr. Branch with appropriate and required counseling and therapy to treat his psychological condition;

f.  In failing to recommend or require that Mr. Branch be treated on an in-patient basis after his psychotic episodes suffered in the months prior to his back surgery;

g.  In failing to refer Mr. Branch to an in-patient psychiatric facility when he suffered his psychotic episodes in the months prior to his back surgery;

h.  In failing to coordinate Mr. Branch's prescriptions between his treatment for back pain and his psychological condition;

i.  In failing to adequately warning Mr. Branch of the dangers of discontinuing or abruptly reducing his intake of benzodiazepine;

j.  In failing to properly taper Mr. Branch off of the benzodiazepines;

k.  In failing to ensure that the proper use of his medications was clearly explained to Mr. Branch after his back surgery;

PAGE 8 – COMPLAINT

l.  In failing to follow up with Mr. Branch after his back surgery to determine if he had

understood how he was to take his medications; and

m.  In failing to promptly follow up with Mr. Branch after his back surgery to evaluate

his mental condition.

41.

As a result of defendant's negligence, Mr. Branch suffered injuries to the muscles,

tendons, soft tissues, and internal organs, the consequences of them, are or may be permanent

and have caused him to suffer non-economic damages, including but not limited to, past and

future pain and suffering as well as past future inconvenience and interference with normal and

usual activities, his time spent interned at the Oregon State Hospital, the fear associated with

being imprisoned with violent criminals, all to his non-economic damages in a reasonable

amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**

**(Loss of Consortium)**

42.

As a result of defendants' negligence, Mrs. Branch suffered the loss of her normal

companionship, support, and society of her husband all to her economic damage in an amount to

be determined at trial.

**THIRD CLAIM FOR RELIEF**

**(Negligent Infliction of Emotional Distress)**

43.

As a result of defendant's negligence, Mrs. Branch suffered the mental distress of her

husband's delusional state that created a fear for her safety and she suffered the horror of

Wm. Keith Dozier, LLC
385 First St., Ste. 215
Lake Oswego, OR  97034
P: (503) 594-0333 F: (503) 697-0841

1   watching the police use deadly force on her husband all to her non-economic damages in an

2   amount to be determined at trial.

3

4

    **WHEREFORE**, Plaintiffs pray for judgment as alleged in each claim stated above.

5

6

7       DATED this 7th day of February 2017.

8                                                    **Wm. Keith Dozier, LLC**

9                                                    **and**

10                                                   **Mark R. Bocci**

11                                                   /s/ Wm. Keith Dozier, Jr.
                                                     Wm. Keith Dozier, Jr., OSB #012478
12                                                   Attorney for Plaintiff John Branch

13

14   **Wm. Keith Dozier, OSB 012478**
     keith@wkd-law.com
15   Wm. Keith Dozier, LLC
     385 First St., Ste. 215
16   Lake Oswego, OR 97034
     Phone: 503-594-0333
17   Fax: 503-697-0841

18
         Attorney for Plaintiff John Branch
19

20   **Mark R. Bocci, OSB 760647**
     markrbocci@me.com
21   385 First St., Ste. 215
     Lake Oswego, OR 97034
22   Phone: 503-607-0222
     Fax: 503-697-0841

23
         Attorney for Plaintiff Rea Branch
24

25

26

PAGE 10 –COMPLAINT                                   Wm. Keith Dozier, LLC
                                                     385 First St., Ste. 215
                                                     Lake Oswego, OR  97034
                                                     P: (503) 594-0333 F: (503) 697-0841